## Commonwealth v. Hickton

*James B. Lees*, for Commonwealth.
*William F. Manifesto* and *John L. Doherty*, for defendant.

O'MALLEY, *P.J.*, December 4, 1980—Before the court is defendant's motion to recuse the district attorney. Defendant, John J. Hickton, has been charged with bribery and obstruction of the administration of law. At a preliminary hearing before a district magistrate, it was revealed that the victim of these crimes for which defendant is charged is the District Attorney of Allegheny County, Robert E. Colville, and/or his office. Several employes of that office testified at the preliminary hearing. The assistant district attorney prosecuting the case on behalf of Allegheny County has admitted in his answer to defendant's motion that he will call upon for testimony District Attorney Colville and at least two of his assistants.

In paragraph three of the assistant district attorney's answer to the motion before the court:

"It is denied that Robert E. Colville has publicly announced that his office is the victim in the above-captioned case. At the preliminary hearing in this matter, Mr. Colville named himself and the Allegheny County Investigating Grand Jury as the victims in this case, in that his integrity as District Attorney was impugned by an attempted bribery and that the work of the Grand Jury was subverted by Defendant's attempted obstruction of its duties . . . it is denied that the Grand Jury is a department of the District Attorney's Office, despite the fact that certain District Attorneys are assigned to work

with the Grand Jury at various times . . . it is asserted that the real victims in the above-captioned case are the citizens of Allegheny County and of the State of Pennsylvania, as the nature of the crimes charged is the obstruction of justice. . . ."

Defendant claims that for the office of the District Attorney of Allegheny County to prosecute this case would be a violation of the Code of Professional Responsibility as adopted by the Supreme Court of Pennsylvania on February 27, 1974. Defendant argues that Canon 5 and the ethical considerations under it prohibit representation by the district attorney's office in this case at bar; the district attorney obviously has presented arguments to the contrary.

Before proceeding with a discussion of these arguments, it is important to look to the code itself for its statements about the impact of the interrelated parts of which it is comprised: Canons, Ethical Considerations, and Disciplinary Rules. The Preliminary Statement states:

"[The Canons, Ethical Considerations, and Disciplinary Rules] . . . do define the type of ethical conduct that the public has a right to expect not only of lawyers but also of their non-professional employees and associates in all matters pertaining to professional employment. *A lawyer should ultimately be responsible for the conduct of his employees and associates in the course of the professional representation of the client.*

"The Canons are statements of axiomatic norms, expressing in general terms the standards of professional conduct expected of lawyers in their relationships with the public, with the legal system, and with the legal profession. They embody the

general concepts from which the Ethical Consideration and the Disciplinary Rules are derived.

"The Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive. They constitute a body of principles upon which the lawyer can rely for guidance in many specific situations.

*"The Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character. The Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action. Within the framework of fair trial, the Disciplinary Rules should be uniformly applied to all lawyers, regardless of the nature of their professional activities. . . ."* (Emphasis supplied.)

Both defendant and the district attorney have focused their arguments upon Canon 5. "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client," and Ethical Considerations 5-10 and 5-11 which amplify the canon in the case of the lawyer acting also as a witness, his withdrawal as counsel in that situation and the employment of new or additional counsel.

The court, however, believes that the disciplinary rules establish the line between acceptable and unacceptable behavior and clearly mandate the proper action.

"D.R.5-102. Withdrawal as Counsel When the Lawyer Become a Witness.

"(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall

withdraw from the conduct of the trial and his firm, if any, shall not continue representation and he or a lawyer in his firm may testify in the circumstances enumerated in D.R.5-101(B)(1) through (4).

"D.R.5-101. Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.

". . .

"(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify: (1) If the testimony will relate solely to an uncontested matter. (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony. (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client. (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

This court finds that the disciplinary rules apply to any attorney from the district attorney's office, as well as to the district attorney himself, "regardless of the nature of their professional activities." Furthermore, both are "responsible for the conduct of employees and associates in the course of the professional representation of the client," which is to say, they are each responsible for each other as well as the other persons employed in the office.

D.R.5-102(A) is straightforward in its prohibition of representation of a client by a particular lawyer or the firm when it is obvious that a lawyer from the

firm will be called upon to testify. A district attorney's office in many ways functions like a law firm except it has only one client, the Commonwealth. The internal operations—the assignment of cases, the access to files, the participation in meetings on cases and policy, the hiring and firing decisions, the ladder to promotion and the human relationships which exist within any group of people—are the same and provide the reason for the prohibition of the rule.

The additional activities of a district attorney's office in the nature of plea bargaining, the changing or dropping of charges and ARD determinations are attendant to its function as prosecutor and are quasi-judicial in nature. But rather than removing the district attorney from the application of these rules, such activities which have a direct bearing upon the course, the fairness and the integrity of the judicial proceedings mandate an even more sensitive and careful review of the particular factual situation. The district attorney has more power with respect to defendant than does plaintiff in a civil suit and he may jeopardize, in zeal or inadvertence, the rights of defendant to a fair trial. Furthermore, the conduct of a district attorney is of public interest because the position is held by someone elected by the people to represent their interests in criminal prosecutions as the Commonwealth; those who work for the district attorney are held to the same standards and their behavior must withstand the same public scrutiny. It is at this juncture where the appearance of impropriety must be reckoned with, for it does have an impact upon the legal system, irrespective of the fairness and exemplary behavior by those involved in a particular case.

The Code of Professional Responsibility establishes as a standard for disqualification of counsel Canon 9:

"Canon 9. A Lawyer Should Avoid Even the Appearance of Professional Impropriety

"E. C. 9-1. Continuation of the American concept that we are to be governed by rules of law requires that the people have faith that justice can be obtained through our legal system. A lawyer should promote public confidence in our system and in the legal profession.

"E. C. 9-2. Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer. On occasion, ethical conduct of a lawyer may appear to laymen to be unethical. . . . When explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession."

Behind the interest for "appearances" in criminal prosecutions is the real concern for what the Federal courts have recently termed "prosecutorial vindictiveness." U.S. v. Andrews, _____ F. 2d _____ (6th Cir. 1980) (en banc); U.S. v. Velsicol Chemical Corp., _____ F. 2d _____ (D.C. 1980). The court in U.S. v. Andrews states:

"We think that Blackledge [v. Perry, 417 U.S. 21 (1974)] points the way to the standard which a court must test for in prosecutorial vindictiveness situations. That standard is whether, in the particular factual situation presented, there existed a 'realistic likelihood of vindictiveness' for the prosecutor's augmentation of the charges. . . .

"In order to make this assessment, a court must

weigh two factors. First, there is the prosecutor's 'stake' in deterring the exercise of some right. . . . Each situation will necessarily turn on its facts.

"Second, there is the prosecutor's conduct. . . . Again, there is no per se rule here.

It is further noted that "'the mere possibility or appearance of vindictiveness is not enough to trigger sanctions under [North Carolina v.] Pearce, [395 U.S. 711 (1969)] and Blackledge. Only when there is a situation presenting a probability of vindictiveness does the due process interest in halting the apprehension of vindictiveness come into play.'"

Although the Federal cases which enunciate the doctrine of prosecutorial vindictiveness arose from factual situations involving actions already accomplished by the prosecutor in later stages of the proceedings than the case at bar, we find them to be instructive. At the heart of a motion to recuse is the prevention of a denial of due process of the defendant's rights and miscarriage of justice. Of little concern at this point in the case at bar is what the prosecutor, here James Lees, has already done. Instead it is the issue of the probability of vindictiveness as perceived by a court at whatever stage its scrutiny is called for by a party.

What is central in the evaluation is the prosecutor's stake—and by the extension set forth in the Code of Professional Responsibility, the stakes of the various associates and employes of the district attorney's office—in the prosecution of the criminal information.

At this point, then, we look to the acutal facts of this case upon which the determination must turn. The elected official and/or appointed assistants

sought to be bribed are from the very same office as the assistant district attorney assigned to the case; they stand as employer and fellow employes to him. The victim of the crime who claims his personal reputation as well as the reputation of the office of the district attorney to have been impugned by the alleged offer of bribery by defendant is the employer of the assistant district attorney. Colville is the one to whom Lees is ultimately responsible. The very grand jury whose activities were purportedly the object of the bribe was impaneled by the criminal court before whom this assistant district attorney must practice daily in Allegheny County. One of the subjects of investigation by this grand jury is the abuse of formerly held public county office by a current county commissioner, who is by virtue of that elected position a member of the salary board which controls the pay and benefits of the assistants and employes of the district attorney.

It does not require a panel of ethicists to see that any assistant district attorney in such a factual situation could be subjected to a variety of external pressures. Undoubtedly he would be cognizant of internal conflicts about his role vis a vis the ideal of justice, the alleged wrongs to the system, the slur upon the reputation of the person who appointed him, the office for which he works and his own future as an attorney. The temptation for prosecutorial vindictiveness would be great.

Whether the potential for "prosecutorial vindictiveness" should lead to the disqualification of any Allegheny County district attorney at this early stage of the proceedings when there is no record to show that in fact there exists an abuse of position and a denial of due process turns on what is currently considered to be ethical behavior for attorneys.

"The current uncertainty over what is 'ethical' underscores the wisdom, when considering such issues, of adopting a restrained approach that focuses primarily on preserving the integrity of the trial process. This view was expressed in Board of Education v. Nyquist, 590 F. 2d 1241 (CA2 1979). There, this court said that, with rare exceptions, disqualification has been ordered only in essentially two kinds of cases: (1) Where an attorney's conflict of interest in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the representation; or more commonly, (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, for example, in violation of Canons 4 and 9." Armstrong v. McAlpin, _____ F. 2d _____ (2d Cir. 1980) (en banc) (vacating 48 L.W. 2205).

The court finds that the situation presented by the case at bar falls within the purview of the Code of Professional Responsibility. Therefore, it would be patently unfair to permit an Allegheny County district attorney to continue in the prosecution of this case and thereby subject him to possible disciplinary action. We see simultaneously the opportunities for both prosecutorial vindictiveness and overcompensation for possible zealous prosecution. The latter may result in a lackadaisical attitude toward the case or an intentional bending over backwards to be fair to the defendant to the point of unfairness to the Commonwealth.

Accordingly, we hereby disqualify any district attorney of Allegheny County from prosecuting the case at bar. The order shall follow forthwith.

In accord with The Administrative Code of April

9, 1929, P.L. 177, as amended, 71 P.S. §297, which provides for the appointment of special attorneys in criminal cases, a written statement to that effect shall be transmitted to the Attorney General of Pennsylvania. A request shall be made for the appointment of a special attorney to represent the Commonwealth in this case by the President Judge, Court of Common Pleas, Allegheny County.

## ORDER

And now, December 4, 1980, upon consideration of the record, arguments and briefs, it is hereby ordered that district attorney James Lees be excused from the prosecution of the case at bar, that no other attorney from the Office of the District Attorney in Allegheny County be permitted to prosecute this case, and furthermore, that a special prosecutor be appointed for this case by the Attorney General of Pennsylvania.